UNITED STATES OF AMERICA
OFFICE OF FEDERAL HOUSING ENTERPRISE OVERSIGHT

In the Matter of:

LELAND C. BRENDSEL,

    Respondent.

HUDALJ Nos. 04-056-NA and
04-057-NA
Notice Nos. 2003-2 and 2003-3

In the Matter of:

VAUGHN A. CLARKE,

    Respondent.

## ORDER REGARDING DISCOVERY

### Duty to Supplement or Correct Discovery Responses

The parties disagree as to whether the rules of practice concerning discovery in this proceeding impose a "continuing obligation" on a party after that party has responded to a document discovery request. The pertinent section in the rules, 12 C.F.R. §1780.27(c), provides:

> (c) Obligation to update responses. A party who has responded to a discovery request is not required to supplement the response, unless:
>
> (1) The responding party learns that in some material respect the information disclosed is incomplete or incorrect, and
>
> (2) The additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

2

This language does not impose a continuing duty on a party to *search* for additional material that may be relevant to a discovery request after having completed the response to that discovery request. Rather, this provision obligates a party to supplement a discovery response only if the party "learns" that the response was incomplete or incorrect. Although the rules do not characterize what sort of information would trigger the obligation to search for supplementary material, certainly something more than a bald allegation of incompleteness from the requesting party is required. A rule of reason should be applied here. If the responding party becomes aware that a discovery response was incomplete or incorrect, the rules of practice impose a duty to search for the missing material or correct the deficiency in the original response, irrespective of a demand from the requesting party.

### Vindictive Prosecution Claim

Respondents' Prehearing Motion Number 10 and their Third Request for Production of Documents rest on their claim that there is reason to believe that OFHEO vindictively increased the amount of civil penalties sought against them in retaliation for Respondents' successes in this proceeding and in related United States District Court proceedings.[1] Respondents want to inquire into the charging decision to see whether it was indeed motivated by bias.

Several administrative agencies have held that vindictive prosecution may be raised as an affirmative defense in administrative hearings. For example, the Commodity Futures Trading Commission entertained a vindictive prosecution claim in a case involving a closely held leverage merchant business that made materially false statements to the Commission, failed to disclose material information to the Commission, and failed to maintain minimum capital requirements. The Commission dismissed the claim, stating:

> Any notion of improper selective or vindictive prosecution is similarly groundless. That doctrine imposes a "rigorous test" requiring that a respondent show not only "that he was singled out for prosecution among others similarly situated" but also that the decision was based upon an unjustifiable standard such as race, religion, or other arbitrary classification, or was designed to "prevent or paralyze his exercise of constitutional rights. . . ."

---

[1] Respondents' Prehearing Motion Number 10 is procedurally improper. Discovery in this proceeding is governed by 12 C.F.R. § 1780.27. That section provides that a party obtains discovery by serving a document request on another party.

03/31/2006 10:32 CHIEF JUDGE OFC OALJ → 94146504 NO.666 D04
Case 1:06-mc-00093-RJL Document 8-2 Filed 04/05/2006 Page 3 of 20

3

> *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982)
> Zack makes not the slightest suggestion of such improper predicates,
> and there were none here.

In *the Matter of Premex, Inc.*, Comm. Fut. L. Rep. (CCH) ¶21,992 (Feb. 1, 1984), No. 79-44, 1984 CFTC LEXIS 768, at *48-49, *rev'd on other grounds*, *Premex, Inc. v. Commodity Futures Trading Comm'n*, 785 F.2d 1403 (9th Cir. 1986). *See also McKnight*, No. CRAA 01-01, 2002 CFTC LEXIS 180, at *29.

In *National Eng'g and Contracting Co.*, 18 O.S.H. Cas. (BNA) 1075 (Sept. 30, 1997), No. 94-2787, 1997 OSAHRC LEXIS 102, at *1, *6, and *10, *aff'd*, *National Eng'g and Contracting Co. V. Herman*, 181 F.3d 715 (6th Cir. 1999), *cert. denied*, 528 U.S. 1045 (1999), the Occupational Safety and Health Review Commission, after holding that vindictive prosecution may be raised as an affirmative defense in administrative hearings before the Commission, stated that:

> Vindictive prosecution is a prosecution to deter or punish the exercise of a protected statutory or constitutional right. *United States v. Goodwin*, 457 U.S. 368, 372 (1982). Although there is no uniform test for proving that a prosecution was vindictive, a threshold showing common to all tests is evidence that the government action was taken in response to an exercise of a protected right. . . .

1997 OSHARC LEXIS 102, at *6 (footnotes omitted).

> In addition to evidence of animus or retaliatory motive, National must produce evidence tending to show that it would not have been cited absent that motive.

*Id.* at *10 (footnotes omitted).

In *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987), *cert. denied*, 485 U.S. 940 (1988), a criminal case arising out of the United States District Court for the District of Columbia, the Circuit Court stated that a defendant may establish vindictive prosecution using either of two theories: (1) actual vindictiveness as demonstrated by objective evidence that the prosecutor acted against the defendant in response to the defendant's exercise of a protected right; or (2) a presumption of vindictiveness as demonstrated by facts indicating a "realistic likelihood" of vindictiveness. *See also*

4

*National Eng'g and Contracting Co.*, 1997 OSAHRC LEXIS 102, at *6. Respondents ground their argument on the second theory articulated by the D.C. Circuit Court.

In their Prehearing Motion Number 10, Respondents assert the following as facts indicating a realistic likelihood of vindictiveness on the part of OFHEO:

- At a November 4, 2004, hearing, this court effectively granted Respondents' motions to dismiss the original Notices of Charges and required the Government to amend the charges.

- On August 23, 2004, this court granted Respondents' motions to compel the Government to produce certain SEC transcripts in the agency's possession.

- Respondents obtained injunctions from United States District Courts prohibiting OFHEO from freezing their post-resignation compensation.

- Thereafter, OFHEO filed an Amended Notice of Charges seeking penalties ten times higher than those sought in the original Notices of Charges.

- On April 26, 2005, this court ordered OFHEO to amend its Amended Notice of Charges because it failed to repair the defects identified in the hearing of November 4, 2004.

- OFHEO filed its SANOC on June 24, 2005. It rests on the same legal theories as the original Notices of Charges and the Amended Notice of Charges.

- The Government has not shown that it has done any additional investigative work since the original Notices of Charges.

- Like the Amended Notice of Charges, the SANOC seeks to subject Respondents to civil money penalties ten times higher than the penalties sought in the original Notices of Charges, but "no additional facts were alleged to support this requested relief." Motion, p. 8.

03/31/2006 10:32 CHIEF JUDGE OFC OALJ → 94146504 NO.666 D06
Case 1:06-mc-00093-RJL   Document 8-2   Filed 04/05/2006   Page 5 of 20

5

- Without explanation, Mr. Blumenthal recused himself from any further involvement in this proceeding shortly after Respondents filed their Third Request for Production of Documents with the Government.

- OFHEO agreed to a civil money penalty of $125,000 in a settlement agreement with Mr. Glenn. In contrast, OFHEO is expected to seek civil money penalties of more than $600 million against Respondents in this proceeding.[2]

At pages 3-4 of Respondents' opposition to OFHEO's motion to strike or limit their discovery requests, Respondents summarize the factual bases for their vindictiveness claim as follows:

> First, in June 2003, Mr. Blumenthal signed a letter that prevented Freddie Mac from releasing Respondents' compensation after their departure from the company. The United States District Court for the District of Columbia subsequently enjoined permanently Mr. Blumenthal and the agency from acting as they had and criticized the agency's action as "simply overreaching."
> .... OFHEO's internal documents might reasonably shed light on whether these events led to any bias against Respondents.
>
> Second, Mr. Blumenthal coordinated OFHEO's special examination into the accounting restatement at Freddie Mac ....That examination led to a written, detailed report which expressed many conclusions on matters that are factually contested in this proceeding. ... Respondents are not aware of Mr. Blumenthal's precise role, however, and the situation is further unclear because OFHEO has represented to Respondents that personnel involved in the special examination have remained and would remain separate from those participating in any capacity in this proceeding. Mr. Blumenthal's elevation to Acting Director and his participation in these proceedings seemed to contradict those representations.

---

[2] In their response to the Government's motion to strike, Respondents do not explain who Mr. Glenn is, where he was employed, what role he played in the events at issue, or how he was similarly situated to Respondents. In short, Respondents have not supplied sufficient information to permit analysis of the merits of their vindictiveness argument *vis-a-vis* Mr. Glenn.

03/31/2006 10:32 CHIEF JUDGE OFC OALJ → 94146504 NO.666 D07
Case 1:06-mc-00093-RJL Document 8-2 Filed 04/05/2006 Page 6 of 20

6

> Third... the Inspector General for the Department of
> Housing and Urban Development issued a report that raised a
> number of specific concerns about Mr. Blumenthal's conduct as it
> related to enforcement decisions in this matter.

The facts cited by Respondents do not indicate a "realistic likelihood" that the charges at issue in this proceeding were filed to punish Respondents for exercising their statutory or Constitutional rights or because OFHEO officials were biased against them.

Respondents particularly complain that the amount of penalties they face increased after they secured injunctions against the Agency in United States District Court and after this court had responded positively to motions that Respondents filed in this proceeding. This argument suffers from classic *post hoc ergo propter hoc* reasoning. OFHEO has an absolute right under 12 C.F.R. § 1780.22(a) to amend or supplement a notice at any stage of a proceeding on its own motion. However, in the case at bar, the amendments were not initiated by OFHEO; they were prompted by this court, a fact which significantly undermines any suggestion that the amendments arose out of malice on the part of OFHEO officials.

Respondents contend that nothing has changed since issuance of the original Notice of Charges except an increase in the penalties sought by OFHEO. The Government counters with an allegation that the full extent of the damage caused by Respondents' conduct was not known when the original Notice of Charges was issued. In other words, OFHEO is arguing that the change in penalty sought is merited by a change in facts known to the Agency. It must be assumed on this record that the Government made this allegation in good faith.

Nearly all of the facts cited by Respondents in support of their discovery requests involve Mr. Blumenthal, and most of Respondents' search for additional evidence in support of their bias claim focuses on Mr. Blumenthal. He signed the SANOC in his capacity as Acting Director of the Agency. However, the Government increased the penalties sought from "second-tier" to "third-tier" in the Amended Notice of Charges, not in the SANOC. Mr. Falcon signed the Amended Notice of Charges, not Mr. Blumenthal. The record is devoid of any evidence that Mr. Blumenthal is responsible for the Agency decision to increase the amount of penalties sought, the decision that forms the foundation for Respondents' vindictiveness argument. Therefore, even if we were to assume,

03/31/2006 10:32 CHIEF JUDGE OFC OALJ → 94146504 NO.666 D08
Case 1:06-mc-00093-RJL Document 8-2 Filed 04/05/2006 Page 7 of 20

7

*arguendo*, that Mr. Blumenthal was indeed biased against Respondents, that bias would be irrelevant to the charging decision that increased Respondents' jeopardy. Respondents may not seek disclosure of irrelevant material.[3]

The record is similarly devoid of any material evidence indicating that Mr. Falcon harbored any personal animus against Respondents. The most that can be said against the Agency's charging decisions is to be found in a report dated October 5, 2004, prepared by HUD's Office of Inspector General, which includes the following statements on page 8:

> Testimony and evidence indicate that the "corporate culture" and "tone at the top" at OFHEO have been significantly affected since June 2003, by the following key developments: perceived "humiliation" in the Freddie Mac affair; the abortive attempt to remove the present Director [Mr. Falcon]; ongoing legislative efforts designed to eliminate OFHEO; and, the transition to a "New OFHEO" culture. This evidence and testimony raises questions about the substance and credibility of certain OFHEO enforcement actions, and the motivation behind such actions.

This report does nothing more than raise questions. As noted at the bottom of every page, the report "contains neither recommendations nor conclusions of the Office of Inspector General." Discovery into alleged prosecutorial bias must be predicated on facts, not questions. Accordingly, as in the case of Mr. Blumenthal, there is no basis in the record to look behind the face of the charges to see whether they were prompted by unlawful animus against Respondents on the part of Mr. Falcon.

Respondents' summary of the factual basis for their discovery request contains language that tellingly undermines their argument. They write that "documents might reasonably shed light," and that "Respondents are not aware of Mr. Blumenthal's precise role," and further, that HUD's Inspector General "raised a number of specific concerns"

---

[3] Respondents concede that Mr. Blumenthal's precise role in the investigation leading to the Notices of Charges is not known. Whatever his role, his participation in the investigation does not *per se* taint the Government's case. An agency may combine investigatory and adjudicatory functions in the same staff. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975)(combination of investigative and adjudicative functions in an administrative agency does not normally create risk of administrative bias in administrative adjudication); *Federal Trade Comm'n v. Cement Institute*, 333 U.S. 683, 701 (1948)(members of the Commission not disqualified in administrative proceedings because of prior official investigations, reports, and testimony on the subject matter of the proceedings to Congress).

03/31/2006 10:32 CHIEF JUDGE OFC OALJ → 94146504 NO.666 D09
Case 1:06-mc-00093-RJL Document 8-2 Filed 04/05/2006 Page 8 of 20

8

about Mr. Blumenthal's conduct." It takes far more than these kinds of tentative and vague statements to overcome the presumption that OFHEO officials acted lawfully when they made charging decisions against Respondents. Generalized allegations that a prosecutor acted out of improper motives do not create a right to discovery. *Wade v. United States*, 504 U.S. 181, 186 (1992).

In *Reno v. American-Arab Anti-discrimination Comm.*, 525 U.S. 471 (1999), the Supreme Court examined the applicability of the selective prosecution defense to a deportation proceeding and found that as a general rule "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *Id.* at 488. The Supreme Court justified its ruling in language pertinent to the instant case as well.

> Even in the criminal-law field, a selective prosecution claim is a *rara avis*. Because such claims invade a special province of the Executive—its prosecutorial discretion—we have emphasized that the standard for proving them is particularly demanding, requiring a criminal defendant to introduce "clear evidence" displacing the presumption that a prosecutor has acted lawfully. *United States v. Armstrong*, 517 U.S. 456, 463-465, 134 L. Ed. 2d 687, 116 S. Ct. 1480 (1996). We have said:
>
> "This broad discretion [afforded the Executive] rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All of these are substantial concerns that make the court properly hesitant to examine the decision whether to prosecute. *Wayte v. United States*, 470 U.S. 598, 607-608, 84 L. Ed. 2d 547, 105 S. Ct. 1524 (1985).

525 U.S. at 489-90.

9

Virtually all of the concerns articulated by the Supreme Court in the *American-Arab* case apply with equal force to the case at bar. Furthermore, as stated by the Supreme Court in *United States v. Armstrong*, 517 U.S. 456, 468 (1996), "The justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for discovery in aid of such claim." Before a defendant is entitled to discovery, the "Courts of Appeals 'require some evidence tending to show the existence of the essential elements of the defense,' . . . ." *Id.* (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2nd Cir. 1974)). Respondents in the instant case have not demonstrated evidence tending to show that there is a reasonable likelihood that OFHEO officials were biased against them or that any charging decision by OFHEO was prompted by a desire by OFHEO officials to punish them for exercising a statutory or Constitutional right.

Finally, Respondents have not even attempted to show that they would not have been charged with violations of the Safety and Soundness Act but for the alleged animating bias of OFHEO officials. *See Olech v. Village of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), *cert. granted*, 527 U.S. 1067 (1999) ("If the defendant would have taken the complained-of action anyway, even if it didn't have the [alleged] animus [toward the plaintiff], the animus would not condemn the action; a tincture of ill will does not invalidate governmental action."), *quoted in Cleveland Construction, Inc. v. Occupational Safety & Health Review Comm'n*, 18 O.S.H. Cas. (BNA) 2028 (Dec. 17, 1999), No. 99-3044, 1999 U.S. App. LEXIS 34071, at *12 (6th Cir.). *See also National Eng'g & Contracting Co.*, 1997 OSAHRC LEXIS 102, at *10 (party claiming prosecution is vindictively motivated "must produce evidence tending to show that it would not have been cited absent that motive").

In sum, Respondents have not satisfied the threshold requirements necessary to permit discovery regarding alleged bias on the part of OFHEO officials.

<u>Particular Comments Regarding
Respondents' Second Request for Documents</u>

**Request number 1. All documents concerning executive compensation, as defined by 12 C.F.R. § 1770.3 and/or job performance of Mitch Delk, Maud E. Mater, and Gregory Reynolds.**

10

Respondents contend that:

> Mr. Delk, Ms. Mater, and Mr. Reynolds were involved in the conduct giving rise to many of the allegations made against Mr. Brendsel and Mr. Clarke. That those other executives received bonuses or other compensation without objection by OFHEO is directly relevant to whether Respondents' compensation was unjust as OFHEO alleges. [Respondents' Opposition to OFHEO's Motion at p. 10]

The Government did not specifically address Respondents' contention that they need the requested material to respond to the Government's charges that they were unjustly compensated. Instead, the Government merely asserts that the compensation of the named parties is irrelevant to this proceeding. That bald assertion is not enough to overcome Respondents' discovery rights on this point.

The Government also argues that the requested material is protected by the named individuals' privacy rights. These concerns are misplaced. The existing protective order will protect the individuals' privacy rights. Furthermore, the privacy objection is inconsistent with the fact that the Government has previously provided Respondents with job performance evaluations for a number of current and former employees of Freddie Mac.

However, because there is merit to OFHEO's objection that the request asks for material far outside the period covered by the SANOC, the request will be appropriately limited, as set out in the Order below.

**Request number 2. All documents reflecting communications with any other federal agency, including, but not limited to the Securities Exchange Commission (SEC), concerning Mr. Clarke and/or Mr. Brendsel.**

The Government justifiably objects to this request because it does not contain a date limitation. The request therefore will be limited in the Order set out below.

**Request number 19. All documents concerning the review and/or approval of the Second Amended Notice of Charges Nos. 2003-2 and 2003-3 by the Secretary of Housing and Urban Development.**

11

The Government has no documents responsive to this request.[4]

**Request number 241. All documents that reflect any Virginia common law principle relevant to the corporate operations of Freddie Mac.**

The documents sought in this request are either publicly available or privileged attorney work-product.

**Request number 266. Any notes, memoranda and/or transcripts reflecting interviews, conducted by OFHEO, or present and/or former Freddie Mac employees on or after September 9, 2005.**

OFHEO possesses no documents responsive to this request.

**Request number 272. All documents concerning the factual representations, allegations, claims for relief and/or prayers for relief contained in the Second Amended Notice of Charges Nos. 2003-2 and 2003-3.**

**Request number 273. All documents in OFHEO's possession tending to prove its claims in the Second Amended Notice of Charges Nos. 2003-2 and 2003-3.**

**Request number 274. All documents in OFHEO's possession tending to disprove its claims in the Second Amended Notice of Charges 2003-2 and 2003-3.**

**Request number 275. The names of each individual likely to be called as a witness by OFHEO in connection with a hearing under the Second Amended Notice of Charges Nos. 2003-2 and 2003-3.**

**Request number 276. All documents supporting the computation of civil penalties sought by OFHEO in the Second Amended Notice of Charges Nos. 2003-2 and 2003-3.**

---

[4] If a party does not possess a document requested in discovery, the proper response is to communicate that fact to the requester rather than to seek a limiting order from the trial judge.

03/31/2006 10:32 CHIEF JUDGE OFC OALJ → 94146504 NO.666 P13
Case 1:06-mc-00093-RJL   Document 8-2   Filed 04/05/2006   Page 12 of 20

12

These requests are premature. Witness lists and exhibits will be exchanged at the proper time under 12 C.F.R. §§ 1780.33 and 1780.34 after resolution of prehearing motions when the issues to be addressed at hearing have been more precisely identified.

### Particular Comments Regarding Respondents' Third Request for Documents

**Request numbers 1-10. [Documents relevant to various activities of Mr. Blumenthal]**

The rules of practice limit discovery to non-privileged documents that have "material relevance to the merits of the pending action." 12 C.F.R. § 1780.26(b). Requests 1-10 of Respondents' third discovery request are designed to explore the charging decisions. As shown above, Respondents have not demonstrated a realistic likelihood that those charging decisions were made on behalf of OFHEO in retaliation for Respondents' exercise of protected rights or because the OFHEO officials who made the charging decisions were personally biased against them. Accordingly, the requested documents are not materially relevant to this proceeding and could be denied in their entirety. However, it appears that OFHEO has previously provided Respondents with documents dated before May 21, 2004, that fall within the ambit of these requests. That the Government has waived its relevancy objection as to materials dated after the closing date of the SANOC but before May 21, 2004, does not mean that it has waived its relevancy objection as to materials dated thereafter. The requests will be limited accordingly in the Order below.

**Request number 11. All documents relating to any investigation of OFHEO or of OFHEO's activities by the Inspector General of HUD, between January 1, 2003 to the present.**

Like requests 1 through 10 of Respondents' third discovery request, this request seeks material that Respondents believe could be helpful to their vindictive prosecution defense. Inasmuch as Respondents have not satisfied the threshold requirements necessary to pursue the defense further, this request will be stricken.

---

For the reasons discussed above, it is hereby ORDERED that:

13

    1. Request numbers 1 and 2 in Respondents' Second Request for Production of Documents are limited to non-privileged documents dated between January 1, 1996, and May 21, 2004;

    2. Request numbers 19, 241, 266, 272, 273, 274, 275, and 276 in Respondents' Second Request for Production of Documents are stricken;

    3. Request numbers 1 through 10 in Respondents' Third Request for Production of Documents are limited to non-privileged documents dated on or before May 21, 2004;

    4. Request number 11 in Respondents' Third Request for Production of Documents is stricken; and

    5. Respondents' Prehearing Motion Number 10 is denied.

*[signature]*
THOMAS C. HEINZ
Administrative Law Judge

Dated: March 30, 2006

# CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing **ORDER REGARDING DISCOVERY**, issued by THOMAS C. HEINZ, Administrative Law Judge, HUDALJ 04-056-NA & 04-057-NA, Notice Nos. 2003-2 & 2003-3, were sent to the following parties on this 30st day of March, 2006, in the manner indicated:

*[signature]*
Chief Docket Clerk

**REGULAR MAIL:**

Attorneys for the Government

Alfred M. Pollard, Esq.
General Counsel's Office
Office of Federal Housing Enterprise Oversight
1700 G Street, N.W.
Washington, D.C. 20552
(202) 414-3750
f: (202) 414-6504

Attorneys for the Respondents

Brendan V. Sullivan, Jr., Esq.
Williams & Connolly, LLP
725 12th Street, N.W.
Washington, D.C. 20005
(202) 434-5000
f: (202) 434-5029

Steven M. Salky, Esq.
Zuckerman Spaeder, LLP
1201 Connecticut Ave, N.W.
Washington, D.C. 20036
(202) 778-1800
f: (202) 822-8106

Samuel M. Forstein
Assistant General Counsel
U.S. Securities and Exchange Commission
450 5th Street, N.W.
Washington, D.C. 20549-0207
f: (202) 942-9537

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**
409 Third Street, S.W., Suite 320
Washington, D.C. 20024

Telephone No. (202) 708-5004
FAX No. (202) 708-5014
Email address: _____@HUD.GOV

TO: *Alfred M. Pollard, Esq.*

FROM: *Judge Heist*

SUBJECT: *Order: Transferring case to a different ALJ.*

COMMENTS:

Number of page(s) including cover sheet: 4

**IF THERE IS A PROBLEM WITH THIS TRANSMISSION, PLEASE CALL US AS SOON AS POSSIBLE.**

UNITED STATES OF AMERICA
OFFICE OF FEDERAL HOUSING ENTERPRISE OVERSIGHT

In the Matter of:

LELAND C. BRENDSEL,

        Respondent.

HUDALJ Nos. 04-056-NA and
04-057-NA
Notice Nos. 2003-2 and 2003-3

In the Matter of:

VAUGHN A. CLARKE,

        Respondent.

## ORDER

This matter is in the process of being transferred to a different administrative law judge in an office yet to be determined. Inasmuch as the Office of Administrative Law Judges at the Department of Housing and Urban Development will not be responsible for this case after today, the parties shall not file any further pleadings until notified of the proper venue.

                                            THOMAS C. HEINZ
                                            Administrative Law Judge

March 31, 2006

# CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing **ORDER** issued by THOMAS C. HEINZ, Administrative Law Judge, HUDALJ 04-056-NA & 04-057-NA, Notice Nos. 2003-2 & 2003-3, were sent to the following parties on this 31st day of March, 2006, in the manner indicated:

*Charlene Powers*
Chief Docket Clerk

**FACSIMILE and REGULAR MAIL:**

Attorneys for the Government

Alfred M. Pollard, Esq.
General Counsel's Office
Office of Federal Housing Enterprise Oversight
1700 G Street, N.W.
Washington, D.C. 20552
(202) 414-3750
f: (202) 414-6504

Attorneys for the Respondents

Brendan V. Sullivan, Jr., Esq.
Williams & Connolly, LLP
725 12th Street, N.W.
Washington, D.C. 20005
(202) 434-5000
f: (202) 434-5029

Steven M. Salky, Esq.
Zuckerman Spaeder, LLP
1201 Connecticut Ave, N.W.
Washington, D.C. 20036
(202) 778-1800
f: (202) 822-8106

Samuel M. Forstein
Assistant General Counsel
U.S. Securities and Exchange Commission
450 5th Street, N.W.
Washington, D.C. 20549-0207
f: (202) 942-9537